UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Wendy Lorenz and Robert Lorenz, | ) | |
| | ) | |
| Plaintiffs, | ) | 3:13-cv-8139 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| State of Arizona, et al, | ) | [Re: Motion at docket 4] |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.  MOTION PRESENTED

At docket 4, the named defendants ("Defendants") move to dismiss the claims filed against them by plaintiffs Wendy Lorenz ('Wendy') and Robert Lorenz ("Robert") (collectively "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Plaintiffs' response is at docket 14, and a supplemental response is at docket 16.  Defendants' reply is at docket 19.  Oral argument was not requested and would not aid the court.

## II.  BACKGROUND

Plaintiffs are the grandparents of a minor child, E.C.  Four of the individual defendants are employees of the State of Arizona Child Protective Services ("CPS").

---

[1]The motion says it is also brought pursuant to Rule 12(b)(1).  Defendants offer no argument concerning Rule 12(b)(1), so the court will not consider Rule 12(b)(1).

Defendant Carter is the director fo the Arizona Department of Economic Security ("DES").  Plaintiffs' claims arise out of a contested adoption proceeding relating to E.C. They claim that defendants' "active interference"[2] constituted negligence or gross negligence and also violated Plaintiffs' rights under the constitutions of the United States and the State of Arizona.  Pursuant to 42 U.S.C. § 1983, Plaintiffs allege in Count One of their complaint that all Defendants, save the State of Arizona, violated their rights under the Fourteenth Amendment to due process and the equal protection of the law.[3]  In Count Two they allege that the negligence or gross negligence of all Defendants in dealing with Plaintiffs caused injury to Plaintiffs.[4]  Finally, in Count Three Plaintiffs allege that all Defendants denied Plaintiffs due process of law in violation of Article II, Section 4, of the Arizona Constitution.

This court has subject matter jurisdiction of the claim in Count One pursuant to 28 U.S.C. § 1331.  This court has subject matter jurisdiction over the claims in Counts Two and Three pursuant to 28 U.S.C. § 28 U.S.C. § 1367, because the claims pled in all three Counts are so closely related that they form part of the same controversy.

### III.  STANDARD OF REVIEW

Rule 12(b)(6), tests the legal sufficiency of a plaintiff's claims.  In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and

---

[2]Doc. 14 at p. 1.

[3]Complaint, doc. 1-2 at pp. 17-20.

[4]*Id.* at pp. 20-22.

construed in the light most favorable to the nonmoving party."[5]  To be assumed true, the allegations "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[6]  Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[7]  "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[8]

　　　　To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."[9]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[11]  "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and

[5]*Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[6]*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[7]*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[8]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[9]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[10]*Id.*

[11]*Id.* (citing *Twombly*, 550 U.S. at 556).

-3-

plausibility of entitlement to relief.'"[12]  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[13]

## IV.  DISCUSSION

### A.  Facts Assumed To Be True

Facts pled by Plaintiffs and therefore assumed true for purposes of the motion at bar are set forth in this section.  Shyla and Patrick are E.C.'s parents.  Patrick is Wendy's son and Robert's stepson.  Shyla became pregnant while living in a foster home, and had moved to another foster home operated by Paul and Jill Cryder by the time E.C. was born.  Wendy visited the Cryder home and held E.C. for about an hour on June 10, 2008.  Wendy had contact with some of the Defendants employed by CPS during that summer.  She and Robert moved to Saipan on October 1, 2008.  On November 4, 2008, the Juvenile Court entered an Order of Dependency of E.C. as to Shyla, and on November 12, 2008, an Order of Dependency of E.C. as to Patrick.

In May of 2009, Wendy attempted to contact some of the individual Defendants by phone from Saipan.  Her calls were not returned.  On June 18, 2009, a petition to intervene in the Juvenile Court proceedings relating to E.C. was filed on behalf of Plaintiffs.  It was granted on July 28, 2009.

---

[12]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[13]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Meanwhile, Wendy had appeared telephonically at a June 23 hearing at which she explained she and Robert were very interested in adopting E.C.  After that hearing Defendant Anne Russel told the Cryders they should fight to retain custody of E.C., because the situation was wrong.  The Cryders filed a petition to intervene.  Jill Cryder testified that she would not have fought to retain custody of E.C. were it not for her conversation with Defendant Anne Russell.

The Juvenile Court entered an order terminating Patrick's and Shyla's parental rights.  Thereafter, Plaintiffs and the Cryders filed petitions to adopt E.C.  A trial was held to consider the competing petitions.  On April 23, 2012, the Juvenile Court entered an order of adoption making the Cryders E.C.'s adoptive parents.  Defendant Orona has acknowledged that in this case the DES/CPS Manual Regulations Providing for Primary Placement Preference of Children with Grandparents was not followed.

**B.  Analysis**

**Constitutional Claims, Counts One and Three**

Plaintiffs' federal and state constitutional claims depend upon the proposition that Defendants deprived them of some liberty or property interest which is protected by the Fourteenth Amendment and the equivalent provision in the Arizona Constitution, Article 2, Section 4.  Defendants contend that the only liberty interest claimed by Plaintiffs is the grandparent/grandchild relationship.[14]  Plaintiffs contend that they do not

---

[14]Doc. 4 at p. 6.

rely entirely on that specific relationship, but also on the more general concept of familial relationship.[15]

A familial relationship--as distinct from a grandparent/grandchild relationship–does not exist in this case.  E.C. never lived with Plaintiffs.  The only contact E.C. had with either of the Plaintiffs was during Wendy's brief visit to the Cryder's home where E.C. was living on June 8, 2008.  Nor is it tenable to say that the defendants somehow prevented Plaintiffs from establishing a familial relationship during the period prior to the adoption.  E.C. was living in Arizona, and Plaintiffs were living in Saipan.

In *Mullins v. State of Oregon,*[16] the Ninth Circuit held that the grandparent/grandchild relationship did not support a Fourteenth Amendment claim. After concluding that the relationship did not create a liberty interest so fundamental as to support a substantive due process claim,[17] the court turned to the possibility that the relationship might create a right adequate to support a procedural due process claim. Finding that nothing in Oregon state law gave a grandparent an enforceable right to adopt a grandchild, the *Mullins* court then specifically refused to "create a grandparental right of adoption as a matter of federal constitutional law."

Given that *Mullins* forecloses any constitutional claim based on federal law, it is necessary to determine whether Arizona law creates such an interest.  To show that

---

[15]Doc. 14 at p. 10.

[16]57 F.3d 789 (9th Cir. 1995).

[17]*Id.* at 57 F.3d 794-795.

such an interest exists, Plaintiffs rely on a decision by the Arizona Supreme Court,

*Bechtel v. Rose*.[18]  There, the court held that it was error to deny a grandmother's

petition to intervene in her parentless grandchild's dependency hearing without first

considering the interest of the child in allowing the intervention:

> In Arizona grandparents are also eligible to be considered as guardians
> for their dependent grandchildren. A.R.S. § 8-241(A)(1)(g).  However we
> do not hold that mere eligibility for consideration automatically confers a
> right to intervene in dependency proceedings.  Our holding today is that
> grandparents should be allowed to intervene in their parentless
> grandchildren's dependency proceedings unless it would not be in the
> child's best interest.[19]

The Arizona court carefully noted the limited nature of the right its decision conferred on

grandparents:

> We emphasize that intervention merely allows the grandparents to be
> heard; it does not confer any right to custody upon them.  That decision
> remains the province of the trial judge.  Nor do we necessarily limit our
> decision today solely to grandparents; other relatives might also be
> accorded intervention should the need and propriety of their intervention
> be demonstrated.[19]

Plaintiffs also cite a more recent Arizona appellate case, *William Z. v. Arizona*

*Dept. Of Economic Security*.[20]  There, the appellate court explained that *Bechtel*

"created a presumption in favor of permissive intervention by grandparents in a case in

which the children are otherwise "parentless," absent a showing that intervention would

---

[18]150 Ariz. 68 (Ariz. 1986).

[19]150 Ariz. 74.

[19]150 Ariz. 73 n.3.

[20]192 Ariz. 385 (Ariz. App. 1998)

be contrary to the child's best interests."[21]  The court then expanded the reach of the *Bechtel* presumption to include cases in which the grandchild is not parentless.

Neither of the cases relied upon by Plaintiffs establishes that a grandparent has a right under Arizona law to adopt a grandchild.  Rather, they hold only that a grandparent has a right to be heard in most cases where a grandchild's placement is being considered.  Here, Plaintiffs' right to be heard was not denied.  They filed a petition to adopt E.C., and their claim was heard by the Juvenile Court.  In sum, this court finds nothing in Arizona law which establishes that the grandparent/grandchild relationship gives rise to a right which may be enforced pursuant to the Fourteenth Amendment or the equivalent provision in the Arizona Constitution.

**Negligence and Gross Negligence Claims, Count Two**

Plaintiffs contend that Defendants owed them a duty under Arizona law which was breached by the actions Defendants took in connection with Plaintiffs' efforts to participate in E.C.'s adoption.  Plaintiffs cite A.R.S. § 8-514(B) which creates a hierarchy of placement preferences.  A grandparent is listed as the second preference ahead of licensed family foster care (which is where E.C. was placed), which is given the fourth preference.  Plaintiffs also cite other Arizona statutes which recognize that placement with a grandparent or other relative may be appropriate.  Plaintiffs rely on provisions of the Arizona Administrative Code.  They rely on Chapter 13, Section 3, of the DES Service Manual.  For their part, Defendants contend that neither any of these provisions, nor all of them taken together, create a duty which they breached.

---

[21]192 Ariz. 388.

-8-

Determination of whether these authorities create a state law tort duty and if they do, whether that duty was breached by Defendants does not depend on federal law. Those determinations depend upon analysis and application of the principles of Arizona tort law.  Resolving such novel and complex issues of state law is a task for which the Arizona Superior Court, from which this case was removed, is better suited than is this court.  Moreover, this order disposes of the only claim over which this court has original jurisdiction.  Accordingly, this court declines to exercise supplemental jurisdiction over Count Two.  That claim will be remanded to the Arizona court.

## V.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss at docket 4 is **GRANTED in part** and **DENIED in part** as follows:

1)  Plaintiffs' claims in Count One and Count Three are **DISMISSED with prejudice**.

2)  Plaintiffs' claim in Count Two is hereby **REMANDED** to the Superior Court of the State of Arizona.

3)The Clerk of Court will please enter judgment that Plaintiffs take nothing on Counts One and Three and remanding Count Two only to the Superior Court of the State of Arizona in and for the County of Apache.

DATED this 7th day of October 2013.


_____
/S/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE